2026-1155

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
_____

PIPE & PILING SUPPLIES,

*Appellant,*

v.

UNITED STATES OF AMERICA,

*Appellee.*

_____

**On Appeal from the United States Court of International Trade**
**Case No. 24-00211**
**Hon. Jane A. Restani**
_____

**APPELLANT'S OPENING BRIEF**

Alexander H. Schaefer
  ASchaefer@crowell.com
Weronika Bukowski
  WBukowski@crowell.com
Pierce Jungwoon Lee
  PLee@crowell.com
Meaghan A. Katz
  MKatz@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone:  202.624.2500
Facsimile:   202.628.5116
Attorneys for Appellant

# TABLE OF CONTENTS

JURISDICTION..................................................................................1

ISSUE PRESENTED FOR REVIEW .....................................................3

STANDARD OF REVIEW ....................................................................3

STATEMENT OF THE FACTS .............................................................4

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT .......................................................................................9

CONCLUSION ..................................................................................34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Cast Iron Pipe Co. v. United States*,
405 F. Supp. 3d 1378 (Ct. Int'l Trade 2019)..................................28, 29

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006)........................................................................27

*Bartenwerfer v. Buckley*,
598 U.S. 69 (2023).........................................................................11

*Bowles v. Russell*,
551 U.S. 205 (2007)...................................................................16, 26

*Crowell v. Benson*,
285 U.S. 22 (1932).........................................................................30

*Fletcher v. Peck*,
10 U.S. 87 (1810)...........................................................................30

*Foster v. Neilson*,
27 U.S. 253 (1829), *overruled on other grounds by United States v. Percheman*, 32 U.S. 51 (1833) .........................................................33

*Foster v. United States*,
303 U.S. 118 (1938)........................................................................18

*Gonzalez v. Thaler*,
565 U.S. 134, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012).......................15

*Gov't of Canada v. United States*,
686 F. Supp. 3d 1320 (Ct. Int'l Trade 2024)....................................31

*Grobest & I-Mei Indus. (Vietnam) Co. v. United States*,
815 F. Supp. 2d 1342 (Ct. Int'l Trade 2012)...............................25, 31

*Harrow v. Dep't of Def.*,
    601 U.S. 480 (2024)................................................................9, 17, 27

*Henderson ex rel. Henderson v. Shinseki*,
    562 U.S. 428 (2011)...........................................................................23

*Highmark Inc. v. Allcare Health Mgmt. Sys.*,
    572 U.S. 559 (2014).............................................................................3

*Hosiden Corp. v. Advanced Display Mfrs. of Am.*,
    85 F.3d 589 (Fed. Cir. 1996) ..............................................................2

*Inspired Dev. Grp., LLC v. Inspired Prods. Grp.*,
    LLC, 938 F.3d 1355 (Fed. Cir. 2019)..................................................3

*Irwin v. Dep't of Veterans Affs.*,
    498 U.S. 89 (1990).  ..........................................................................26

*Kolovrat v. Oregon*,
    366 U.S. 187 (1961)....................................................................18, 33

*Mattox v. United States*,
    156 U.S. 237 (1895).........................................................................18

*Medellín v. Texas*,
    552 U.S. 491 ...................................................................................33

*Nelson v. Nicholson*,
    489 F.3d 1380 (Fed. Cir. 2007) ..........................................................3

*Russello v. United States*,
    464 U.S. 16 (1983)...........................................................................15

*Santos-Zacaria v. Garland*,
    598 U.S. 411 (2023)...............................................................14, 28, 29

*United Say. Assn. of Tex. v Timbers of Inwood Forest Associates, Ltd.*,
    484 US 365 (1988)...........................................................................18

*United States v. Wong*,
575 U.S. 402 (2015).................................................................10

*Wilkins v. United States*,
598 U.S. 152 (2023)..............................................................9, 27

**Statutes**

8 U.S.C. § 1252(d)(1)..............................................................14

19 U.S.C. § 1516a..................................................................1, 31

19 U.S.C. § 1516a(a)(5)(A) .......................................................16

19 U.S.C. § 1516a(b)(3)............................................................12

19 U.S.C. § 1516a(g)(2)..........................................................1, 15

19 U.S.C. § 1516a(g)(3)............................................................12

19 U.S.C. § 1516a(g)(3)(B) .........................................3, 5-19, 22-34

19 U.S.C. § 1516a(g)(3)(B)(iii)...................................................25

19 U.S.C. § 1516a(g)(8)(A)(ii)....................................................25

19 U.S.C. § 4501....................................................................22

19 U.S.C. § 4512(a)(1)...........................................................25, 31

19 U.S.C. § 4584....................................................................12

28 U.S.C. § 253(c) ................................................................5, 6

28 U.S.C. § 1295(a)(5)..............................................................2

28 U.S.C. § 1581(c) ..................................................................1

28 U.S.C. § 1585..................................................................19, 31

Customs Court Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727 ......................19, 31

Tariff Act of 1930 , Pub. L. No. 71-361, 46 Stat. 590
(1930)................................................................................13

Canada-United States Free-Trade Agreement Implementation Act of
1988, Pub. L. No. 100-449, tit. IV, 102 Stat. 1851, 1878-98 (1988) .................19

United States-Mexico-Canada Agreement Implementation Act, Pub.
L. No. 116-113, tit. IV, 134 Stat. 11, 61-66 (2020) (USMCA Implementation
Act)........................................................................................12, 13, 22, 25, 31

USMCA Art. 10.12 ........................................................................12, 22, 25

North America Free Trade Agreement Implementation Act, Pub. L. No. 103-182,
tit. IV, 107 Stat. 2057, 2129-48 (1993) (NAFTA Implementation Act) ........... 21


**Other Authorities**

Alan M. Rugman and Andrew D.M. Anderson, *Administered
Protection in America* 13-14 (Croom Helm, 1987)..............................................21

Alan R. Rugman, *A Canadian Perspective on U.S. Administered
Protection and the Free Trade Agreement*, 40 Me L Rev 305, 321
(1988) ............................................................................................................21

Donald S. Macdonald, *Rep. of the Royal Comm'n on the Economic Union and
Development Prospects for Canada* 285, 376-77(1985)....................................20

*Hearing on H.R. 6394 Before the Subcomm. on Monopolies &
Commercial Law of the H. Comm. on the Judiciary*, 96th ..........................19, 20

M. Angeles Villarreal, Cong. Rsch. Serv., R44981, *The United
States-Mexico-Canda Agreement* 26 (2024)............................................22

Robert Howse, *Developments in USMCA dispute settlement,*
Brookings (Mar. 6, 2024), https://www.brookings.edu/articles/developments-
inusmca-disputesettlement/...............................................................21

S. REP. 100-509, at 70, as reprinted in 1988 U.S.C.C.A.N. 2395, 2464 (Additional
Views by Senators Dennis DeConcini and Howell T. Heflin)..........................20

Susan A. Maxson, *The Binational Dispute-Resolution Panel Created
by the United States-Canada Free Trade Agreement: What Did
Canada Win?*, 1990 U. Chi. L. Rev. 653, 662 (1990)..................................20, 21

USCIT Rule 77(e)(4) ........................................................................5, 6

*Jurisdiction of the Court of International Trade*

Subject matter jurisdiction is the issue on appeal before this Court. Pipe & Piling Supplies ("Appellant" or "Pipe & Piling") filed an appeal in the Court of International Trade ("CIT") from a final determination in the administrative review of an antidumping order on Large Diameter Welded Pipe ("LDWP") from Canada on December 27, 2024. Appx017. The CIT generally has jurisdiction under 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c) to review challenges to anti-dumping/countervailing duty ("AD/CVD") determinations related to both Free Trade Agreement ("FTA") member countries and non-FTA member countries, but access to judicial review is unavailable for parties from FTA member countries if a binational panel is requested. 19 U.S.C. § 1516a(g)(2).

On January 27, 2025, Pipe & Piling moved for a statutory injunction to enjoin liquidation after counsel for the United States (the "government") declined to provide consent and indicated that the government would seek dismissal. Appx038. Judge Stephen Alexander Vaden issued an order on February 19, 2025, temporarily enjoining the liquidation of any unliquidated entries of LDWP from Canada, pending resolution of the government's motion to dismiss. Appx049-050. The government filed its motion to dismiss Pipe & Piling's complaint for lack of

subject matter jurisdiction and for failure to state a claim on March 20, 2025. Appx051.

*Jurisdiction of Court of Appeals for the Federal Circuit*

On July 7, 2025, this action was reassigned to the Honorable Jane A. Restani. Appx144. Judge Restani issued a final order in this action on September 8, 2025, granting the government's motion to dismiss and denying Pipe & Piling's motion for a statutory injunction. Appx001-011. Pipe & Piling timely filed a notice of appeal of that order on November 7, 2025. Appx149.

Under 28 U.S.C. § 1295(a)(5), the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from final decisions of the United States Court of International Trade. Moreover, the CIT's February 19, 2025 order enjoining liquidation must remain in place until the resolution of this appeal. *See Hosiden Corp. v. Advanced Display Mfrs. of Am.*, 85 F.3d 589, 591 (Fed. Cir. 1996) (collecting cases and explaining that "liquidation, once enjoined, remains suspended until" there is a "conclusive" decision no longer subject to appeal).

Therefore, this Court has jurisdiction over Pipe & Piling's appeal from the CIT's order granting dismissal and denying Appellant's motion for a statutory injunction.

## ISSUE PRESENTED FOR REVIEW

1.　　Whether the notice requirements of 19 U.S.C. § 1516a(g)(3)(B)

(hereinafter "the Special Rule") are jurisdictional.

## STANDARD OF REVIEW

Questions of law are traditionally reviewed *de novo* on appeal. *Highmark*

*Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 563 (2014). Subject matter

jurisdiction is a question of law. *Inspired Dev. Grp., LLC v. Inspired Prods. Grp.*,

LLC, 938 F.3d 1355, 1360 (Fed. Cir. 2019). When "material facts are not in

dispute and the adoption of a particular legal standard would dictate the outcome of

[an] equitable tolling claim, … the question of the availability of equitable tolling

[is] a matter of law[.]" *Nelson v. Nicholson*, 489 F.3d 1380, 1383 (Fed. Cir. 2007)

(cleaned up).

The material facts of this matter are not in dispute, and the remaining factual

record cannot be addressed until the threshold issue of subject matter jurisdiction is

decided. The only question presented on appeal is whether the notice timing

provisions of 19 U.S.C. § 1516a(g)(3)(B) are jurisdictional or are merely claims-

processing rules that could be equitably tolled. The standard of review is therefore

*de novo*.

## <u>STATEMENT OF THE FACTS</u>

Pipe & Piling is a Canadian producer and exporter of merchandise, including LDWP. Appx017-018. On July 12, 2023, the United States Department of Commerce ("Commerce") initiated an administrative review of an antidumping order on LDWP from Canada and selected Pipe & Piling as the sole mandatory respondent. Appx019. From September 2023 through February 2024, Pipe & Piling timely submitted responses to all of Commerce's requests and questionnaires. Appx019-025. However, on May 21, 2024, Commerce issued preliminary results rejecting Pipe & Piling's submitted information and applying total "adverse facts available." Appx025. Commerce applied a punitive dumping margin of 50.89 percent, claiming that Pipe & Piling failed to provide a "clear and consistent narrative" and pointing to the company's voluntary submissions of additional information as justification. *Id*. Pipe & Piling filed a case brief on June 20, 2024, but Commerce issued and published a final determination on October 31, 2024, again rejecting Pipe & Piling's arguments. Appx025-026.

Pipe & Piling filed a Summons on November 27, 2024, noticing its intent to contest Commerce's final determination, filed its Complaint on December 17, 2024, and sought the government's consent to a statutory injunction during a phone conversation on January 14, 2025. Appx013; Appx037-038. The government then

4

stated its position that, "the Court lacks jurisdiction and therefore a Form 24 statutory injunction – a vehicle to be used in more run-of the-mill cases in which all parties agree to jurisdiction -- would be inappropriate. The government will respond should plaintiff file a motion for preliminary injunction." Appx038. At this point, Pipe & Piling became aware of its good faith procedural error—because Pipe & Piling is a Canadian producer/exporter, it is subject to the alternative notice requirements of the Special Rule rather than the typical filing procedures for non-FTA member entities. 19 U.S.C. § 1516a(g)(3)(B). Pipe & Piling's notice of intent to seek judicial review was thus filed seven days after the 20-day limit under the statute. *Id.*; Appx013. Notably, however, no other parties filed a request for a binational panel and the Government of Canada demonstrated no interest in the matter. *See, e.g.,* Appx042; Appx105; Appx119.

Pipe & Piling proceeded to file a motion for statutory injunction on January 27, 2025, stating its intent to address its procedural timing error and the government's position on jurisdiction. Appx042-043. After holding a status conference on February 11, 2025, Judge Vaden issued an order setting a briefing schedule for the government's motion to dismiss and temporarily enjoining the liquidation of any LDWP from Canada related to Pipe & Piling and this action. Appx049-050. Briefing continued in accordance with this schedule until Judge

Vaden was replaced by Judge Restani pursuant to 28 U.S.C. § 253(c) and USCIT

Rule 77(e)(4).  Appx144.  Judge Restani set oral argument for August 28, 2025,

but subsequently cancelled and denied Pipe & Piling's unopposed motion for oral

argument on August 15, 2025.  Appx145; Appx148. On September 8, 2025, Judge

Restani issued a final order granting the government's motion to dismiss for lack

of subject matter jurisdiction.  Appx001; Appx012.

## SUMMARY OF ARGUMENT

The CIT misapplied the "clear statement rule" and erred in dismissing Pipe

& Piling's complaint for lack of subject matter jurisdiction based on a failure to

meet the timely notice requirements of the Special Rule. A proper application of

the clear statement rule establishes that the notice timing provisions of the Special

Rule are actually nonjurisdictional claims-processing rules, not jurisdictional bars.

First, the plain text of the Special Rule and the statutory scheme in which it

is embedded demonstrate no indication of Congressional intent to limit jurisdiction

when no panel is requested.  The language of the rule is similar to language already

held to be nonjurisdictional by the Supreme Court; there is contrasting language

elsewhere in the statute evidencing Congress's ability to speak clearly on

jurisdictional scope and power; and without a clear statement otherwise, the

Supreme Court has established that timing rules for appeals from agency decisions are presumptively nonjurisdictional.

Second, within the broader context of AD/CVD law, international trade policy, and legislative intent, a nonjurisdictional reading of the Special Rule better supports and enforces the original purpose of binational panel review ("BPR"). Binational panels were not created to strip jurisdiction from U.S. courts, but to provide another optional layer of protection for Canadian and Mexican manufacturers and exporters from the potential bias of U.S. agencies and from harassment by U.S. litigants. That underlying purpose would be undermined by a jurisdictional reading of the Special Rule because the deadlines to seek judicial review and panel review are so close together that a single filing error can easily strip a Canadian or Mexican litigant of any review whatsoever. That drastic consequence and reduced access to challenge U.S. agency determinations would undermine the intent of the parties to the United States-Mexico-Canada Agreement ("USMCA") to protect Canadian and Mexican manufacturers and exporters. In contrast, the potential allowance of equitable tolling under the Special Rule would better preserve FTA member countries' rights without opening the door to unwanted harassment.

Third, there is no binding precedent that could otherwise overcome the absence of a clear jurisdictional statement in the Special Rule. There is only one prior case holding that jurisdiction is stripped even when no panel is requested, but this opinion is a jurisdictional "drive-by" with no precedential weight. The opinion relies solely on language already found to be nonjurisdictional in similar statutes and simply concludes without further analysis that the Special Rule is jurisdictional. That is not enough to overcome the Supreme Court's well-established presumption in favor of nonjurisdictional interpretations of timing rules.

Finally, a jurisdictional reading of the Special Rule raises serious constitutional questions that could be avoided if the notice provisions are held to be nonjurisdictional. Because the Special Rule's deadlines for judicial review and BPR are so close together, litigants can easily be stripped of access to any forum at all based on a single error. This not only presents a potential procedural due process issue but also creates a confusing discrepancy between the rights of FTA and non-FTA countries. Equitable tolling is available in AD/CVD cases for manufacturers and exporters from non-FTA countries—it makes no sense that manufacturers and exporters from FTA member countries should have fewer rights and protections. Moreover, a jurisdictional reading would undermine the

international policy imbued in the USMCA and create a potential separation of powers conflict between the Executive and Congress. If Congress intentionally limited jurisdiction in the implementing statute for the USMCA when no panel review is requested, that would contradict the underlying Executive intent of the treaty to better protect Canadian and Mexican parties from U.S. bias and harassment.

## ARGUMENT

There is only one question presented to this Court on appeal: whether the notice timing provisions of the Special Rule are jurisdictional. Based on the statute and well-established Supreme Court precedent, the answer is clearly "no."

The Supreme Court applies the "clear statement rule" to determine whether statutory time bars are jurisdictional. *Wilkins v. United States*, 598 U.S. 152, 157 (2023). There is only one type of time limit that always "counts as jurisdictional" because of its "exceptional nature" and longstanding historical precedent: statutory deadlines "to appeal from one Article III court to another." *Harrow v. Dep't of Def.*, 601 U.S. 480, 488–89 (2024). However, "[a]s to all other time bars" (including appeals from an agency to a court), the Supreme Court requires a showing that Congress clearly intended for the time bar to be jurisdictional based on the traditional rules of statutory construction. *Id.* at 489.

Furthermore, the Supreme Court has "made plain that most time bars are nonjurisdictional" because of the harsh consequences litigants would otherwise face. *United States v. Wong*, 575 U.S. 402, 408–10 (2015). This is a high bar and "Congress must do something special" to establish a statutory time limit "as jurisdictional and so prohibit a court from tolling it." *Id.* at 410. As such, time bars are presumptively treated as "claims-processing rules, which seek to promote the orderly progress of litigation, but do not deprive a court of authority to hear a case." *Id.* (cleaned up).

Under the clear statement test, the notice timing provisions of the Special Rule are nonjurisdictional "claims-processing" rules. First, there is no clear language or scheme in the statute indicating that Congress or the parties to the USMCA intended for these provisions to be jurisdictional where no binational panel has been requested. Second, the legislative history, context, and purpose of the statute and the USMCA all support that the timing rules should be nonjurisdictional where no panel has been requested. Third, there is no binding precedent establishing that the notice timing provisions are jurisdictional where no binational panel has been requested. And finally, if the notice provisions of the Special Rule were jurisdictional, it would raise serious constitutional questions that could invalidate the statute altogether.

Because Congress and the parties to the USMCA clearly intended for the notice timing provisions of the Special Rule to be nonjurisdictional when no panel is requested, this Court should hold as such and remand the case to the CIT for further consideration regarding the availability of equitable tolling and its application to Pipe & Piling specifically.

I. **The plain text and statutory scheme of the Special Rule do not clearly convey congressional intent to limit jurisdiction when no binational panel is requested.**

Under the clear statement test and the traditional rules of statutory construction, a court must first look to the plain text and overall scheme of a statute to determine whether Congress clearly intended a time bar to be jurisdictional. *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023) ("[W]e start where we always do: with the text of the statute."). In this case, neither the text of the Special Rule nor the overall scheme of the statute provide a clear statement that the timing requirements are jurisdictional. In fact, they support precisely the opposite.

a. **The Special Rule and the USMCA do not contain a clear statement regarding jurisdiction.**

Neither the USMCA's text nor that of the Special Rule comes anywhere close to containing a clear statement on jurisdiction when no panel has been requested. If anything, the text of the treaty and its implementing statute support that the Special Rule's notice provisions are nonjurisdictional.

11

First, a plain text reading suggests that BPR was not intended to fully replace judicial review—rather, it suggests that judicial review is the default and BPR is an additional alternative to which one must opt in. The USMCA Implementation Act and the Special Rule use only permissive language in reference to panel review and provide that parties must proactively opt in to this forum. *See* United States-Mexico-Canada Agreement Implementation Act, Pub. L. No. 116-113, tit. IV, 134 Stat. 11, 61-66 (2020) (hereinafter "USMCA Implementation Act"); 19 U.S.C. § 1516a(g)(3)(B). 19 U.S.C. § 4584, which covers dispute resolution for AD/CVD cases, states that one "may" request panel review, and the Special Rule provides that "if" panel review of a determination is requested then review is not available. 19 U.S.C. § 1516a(g)(3). The USMCA similarly provides that, "This Article shall not apply where: (a) neither involved Party seeks panel review of a final determination." USMCA Art. 10.12(10). Moreover, BPR rulings are not binding in U.S. courts and thus BPR could never fully substitute for judicial review. 19 U.S.C. § 1516a(b)(3). Based on this permissive language and the functional differences between BPR and judicial review, it makes no sense to assume that BPR is the preferred or default forum for FTA member countries based on text alone.

In addition, this disjointed statutory scheme with carve-outs for judicial review is too convoluted to constitute a clear statement on jurisdiction. The USMCA Implementation Act as integrated with the Tariff Act of 1930 breaks the provisions of the Special Rule into multiple sections, contains a large amount of language that could be interpreted as containing implicit and explicit exceptions, does not repeat or use overly emphatic language regarding jurisdiction, the tolling would require no substantive limitations recovery, and the timing limitations are very narrow. *See generally* USMCA Implementation Act; Tariff Act of 1930, Pub. L. No. 71-361, 46 Stat. 590 (1930). There is simply no single, clear statement anywhere in the USMCA or the Tariff Act of 1930 that the notice provisions of the Special Rule are jurisdictional.

The lack of a clear textual statement alone is almost enough to conclude that the Special Rule is nonjurisdictional.

### b. The text of the Special Rule is similar to other nonjurisdictional time bars.

In its order dismissing Pipe & Piling's complaint, the CIT attempts only one plain text argument: the text of the Special Rule is jurisdictional because it "states that judicial review is available 'only if the party seeking to commence review has provided timely notice.'" Appx008. However, in the same breath, the CIT

acknowledges that the Supreme Court has recently held "strikingly similar" language to be nonjurisdictional. *Id.*

In *Santos-Zacaria v. Garland*, the Supreme Court reversed the Fifth Circuit's holding that the plaintiff's failure to meet a statutory exhaustion requirement stripped the court of jurisdiction to hear her appeal of an Immigration Judge's decision. 598 U.S. 411, 431 (2023). The statute at issue provided that "A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The Court held that this "provision lacks the clear statement necessary to qualify as jurisdictional" because (1) exhaustion requirements are "quintessential claim-processing rule[s]," and (2) the contrast between this provision and another section of the statute stating that "no court shall have jurisdiction" demonstrated that Congress could have spoken more clearly "if it intended § 1252(d)(1) to have similar jurisdictional force." *Santos-Zacaria*, 598 U.S. at 417-19 (cleaned up).

Because this statutory language is so similar and because both time bars and exhaustion requirements are presumptively treated as "claim-processing rules", the notice provisions of the Special Rule are clearly nonjurisdictional. And as explained in the next section, the Supreme Court's reasoning on contrasting language applies to the Special Rule as well.

### c. Congress only expressly strips jurisdiction when a binational panel is timely requested.

It is a well-established cannon of statutory interpretation that, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up); *accord Gonzalez v. Thaler*, 565 U.S. 134, 143 (2012). Congress' clear statement stripping jurisdiction when a binational panel is requested contrasts with the Special Rule and thus implies that its notice requirements are nonjurisdictional.

In another section of the statute, Congress clearly states that "[i]f binational panel review of a determination is requested … no court of the United States has power or jurisdiction to review the determination on any question of law or fact by an action in the nature of mandamus or otherwise." 19 U.S.C. § 1516a(g)(2). It is hard to imagine a more direct statement on jurisdiction than that. And functionally, it makes sense for a panel request to strip jurisdiction—there are no severe consequences because a forum for review is still available, and this request-triggered jurisdiction stripping facilitates the purpose of the USMCA to protect member nations' rights to that alternative adjudicatory process.

In contrast, the language of the Special Rule contains no such clear statement and the consequences of a jurisdictional reading would be severe. *See supra* Sections I.a-b; *infra* Sections II.b, IV.a. Not only does the Special Rule expressly provide for suspension of the time for requesting BPR under certain circumstances, but it also makes no mention of jurisdiction or judicial power. 19 U.S.C. § 1516a(g)(3)(B). The Special Rule only requires that notice be timely and, in combination with another section of the statute, defines timeliness as "no later than … 20 days" after the publication of the final determination at issue. *Id.;* 19 U.S.C. § 1516a(a)(5)(A). If this provision were treated as jurisdictional, there would be no alternative forum left—a failure to timely request judicial review would also foreclose the right to seek BPR.

Based on the differing language and functions of the statute when BPR is requested as opposed to when it is not, it is clear that the notice provisions of the Special Rule are nonjurisdictional.

### d. The Special Rule's notice provisions are most similar to timing provisions regarding appeals from agencies—not appeals from one Article III court to another.

The CIT mistakenly characterizes the Special Rule as more akin to a jurisdictional appellate deadline because it "governs under what circumstances a case can move from one forum (the binational panel) to a different forum (the

Court of International Trade)." Appx009. The CIT bases this assessment on

*Bowles v. Russell*, in which the Court affirmed "a line of precedents pre-dating" the

clear statement rule holding "that the deadline for filing an appeal from a district

court's decision in a civil case is jurisdictional[.]" 551 U.S. 205, 127 (2007);

*Harrow*, 601 U.S. at 480, 488–89. In actuality, however, the Special Rule does not

govern movement from one court to another, but from agency review to a choice of

forum. The Special Rule thus falls outside the narrow exception of *Bowles*.

The Supreme Court has held that appeals from an agency "fall[] outside the

*Bowles* exception" to the clear statement rule. *Id.* at 489. As explained in *Harrow*,

*Bowles* is an exception to the presumption that statutory time bars are

nonjurisdictional and that exception applies only to "statutory deadlines to appeal

from one Article III court to another." *Id.* at 488–89 (cleaned up). All other time

bars must pass the clear statement test.

The Special Rule applies to appeals of agency determinations, not Article III

orders. The CIT's analogy to *Bowles* is thus misplaced—the notice provisions of

the Special Rule cannot fit within that exception to evade the application of the

clear statement test.

## II. The Special Rule was intended to protect Canadian parties like Pipe & Piling from U.S. agencies and U.S. litigants.

If the text and overall scheme of a statute contain no clear statement as to whether a time bar is jurisdictional, the court must then evaluate the statute in the context of the law as a whole and the legislative intent with which the statute was initially enacted. *See United Say. Assn. of Tex. v Timbers of Inwood Forest Associates, Ltd.*, 484 US 365, 371 (1988) (explaining the "holistic" nature of statutory interpretation); *Foster v. United States*, 303 U.S. 118, 120 (1938) ("Courts should construe laws in harmony with the legislative intent and seek to carry our legislative purpose"); *Mattox v. United States*, 156 U.S. 237, 244 (1895) ("We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted...").

Here, because the Special Rule is part of a statute implementing a non-self-executing treaty, the notice provisions are most appropriately assessed in the context of U.S. AD/CVD law, the USMCA and its predecessor treaties, and the intent of both Congress and the original parties to the treaties. *Kolovrat v. Oregon*, 366 U.S. 187, 194 (1961) ("[w]hile courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight."). This context and intent support that the notice provisions of the Special Rule are nonjurisdictional.

      **a.  The purpose of binational panel review is not to replace judicial review—it is to protect Canada and Mexico from U.S.**

18

**agency bias.**

The original purpose and intent of BPR under the USMCA was not to replace judicial review, and the purpose of the Special Rule is not to "facilitat[e] review by binational panels instead of domestic courts" as the CIT suggests. Appx005. The actual purpose behind the BPR provisions of both the treaty and its implementing statute has always been to protect Canadian and Mexican manufacturers and exporters from the potential bias of U.S. *agencies*, not U.S. courts.

Since the late 1970s, Congress has sought to expand judicial review of AD/CVD cases, not limit it. BPR was established in 1988 under the Canada-United States Free Trade Agreement ("CUSFTA"), a predecessor to the USMCA. *See* Canada-United States Free-Trade Agreement Implementation Act of 1988, Pub. L. No. 100-449, tit. IV, 102 Stat. 1851, 1878-98 (1988) (hereinafter "CUSFTA Implementation Act"). Just eight years earlier in 1980, Congress intentionally expanded the CIT's jurisdiction in AD/CVD matters and vested it with "all the powers in law and equity of" an Article III court. 28 U.S.C. § 1585; the Customs Court Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727. The purpose of that jurisdictional expansion was to "make it clear to those who suffer an alleged injury in this area, that they may seek redress in a court with confidence that their case

will be heard on the merits—not decided on jurisdictional grounds," as well as to simplify the "entirely too complex" procedural rules of this Court's predecessors and their "very peculiar, illogical structure and jurisdiction[.]" *Hearing on H.R. 6394 Before the Subcomm. on Monopolies & Commercial Law of the H. Comm. on the Judiciary*, 96th Cong. 4 (1980) (statement of Senator Dennis DeConcini).

In entering and implementing the CUSFTA, neither the parties to the treaty nor Congress sought to limit that broad jurisdictional grant – "elimination of judicial review is not the stated goal of the [CUSFTA] and decisions by U.S. courts were not seen as the problem in the negotiations with Canada[.]" S. REP. 100-509, at 70, *as reprinted* in 1988 U.S.C.C.A.N. 2395, 2464 (Additional Views by Senators Dennis DeConcini and Howell T. Heflin).

Instead, the true purpose of the CUSFTA was to liberalize trade between Canada and the United States, and to fight against U.S. trade protectionism. Donald S. Macdonald, *Rep. of the Royal Comm'n on the Economic Union and Development Prospects for Canada* at 376—77 (1985). During negotiations, Canada first sought a *full exemption* from U.S. AD/CVD laws because of concerns that they gave "American business interests broad scope to harass their foreign competitors and thus deter investment." *Id.* at 285; *see also* Susan A. Maxson, *The Binational Dispute-Resolution Panel Created by the United States-Canada Free*

20

*Trade Agreement: What Did Canada Win?*, 1990 U. Chi. L. Rev. 653, 662 (1990)

(hereinafter "Maxson").  When the U.S. refused to provide a full exemption,

Canada then proposed BPR—but to replace the International Trade Association

("ITA") and the International Trade Commission ("ITC") because of their

"questionable investigative practices" and their superficial and hasty information

gathering, not to replace judicial review.  Alan R. Rugman, *A Canadian*

*Perspective on U.S. Administered Protection and the Free Trade Agreement*, 40

Me L Rev 305, 321 (1988); *see* Alan M. Rugman and Andrew D.M. Anderson,

*Administered Protection in America* 13-14 (Croom Helm, 1987).

Canada compromised by agreeing to BPR as an alternative to judicial review

rather than as a substitute for agency investigations but fighting U.S. trade

protectionism and agency bias has always remained the purpose of BPR.  *See*

Maxson at 663—64; Robert Howse, *Developments in USMCA dispute settlement*,

BROOKINGS (Mar. 6, 2024), https://www.brookings.edu/articles/developments-in-

usmca-dispute-settlement/.  BPR was preserved in the North American Free Trade

Agreement ("NAFTA") but became a topic of debate again during negotiations

over the USMCA in 2018.  North America Free Trade Agreement Implementation

Act, Pub. L. No. 103-182, tit. IV, 107 Stat. 2057, 2129-48 (1993) ("NAFTA

Implementation Act").  The United States attempted to remove Chapter 19 of

NAFTA, which provides for BPR as it was under the CUSFTA, from the agreement during negotiations, but "Canada and Mexico expressed support for retaining the mechanism, with Canada drawing a 'red line' firmly opposing its elimination." M. Angeles Villarreal, Cong. Rsch. Serv., R44981, *The United States-Mexico-Canada Agreement* 26 (2024). Panel review was ultimately maintained in Chapter 10 of the USMCA and was codified by the USMCA Implementation Act. USMCA Art. 10.12; 19 U.S.C. § 4501; USMCA Implementation Act.

Given this purpose to protect Canadian exporters from U.S. bias, it makes no sense for the notice provisions of the Special Rule to be jurisdictional such that a Canadian exporter like Pipe & Piling is denied any access to review of an agency determination—judicial or otherwise—simply because of a minor filing error. The elimination of judicial review under these circumstances would directly undermine the actual purpose of BPR by subjecting a Canadian exporter to U.S. agency bias with no opportunity to contest that agency's determination.

### b. The potential availability of equitable tolling would enforce USMCA-members' rights, not undermine them.

The CIT suggests that a nonjurisdictional reading of the Special Rule "may undermine the United States' ability to live up to its international obligations in the eyes of other USMCA members," or, "at the very least, narrow the rights foreign

countries advocated for in a 'contract between [] nations.'" Appx010. These suggestions are misguided. A nonjurisdictional reading of the Special Rule actually preserves and enforces the rights of USMCA members.

First, a nonjurisdictional reading would allow for the application of equitable tolling and would thus prevent USMCA members from losing their rights altogether as the result of a single filing mistake. In its order, the CIT attempts to distinguish the Special Rule from other litigation deadlines and exhaustion requirements because it is "distinct from a situation where, because there is only one possible forum, reading a procedural rule as jurisdictional may…creat[e] severe consequences for non-compliance." Appx010. This argument fundamentally misunderstands the statute and the relationship between the Special Rule's 20-day deadline to provide notice to seek judicial review and its 31-day deadline to request BPR.

In fact, the consequences for non-compliance with the Special Rule would be just as severe as they would be for any other filing deadline—which is precisely why filing deadlines are typically nonjurisdictional. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). If the notice provisions of the Special Rule are jurisdictional and thus not subject to equitable tolling under any circumstance, a single timing error can easily strip FTA-member plaintiffs like Pipe & Piling

from accessing not only the CIT, but BPR as well. *See infra* Section IV.a. Here, because Pipe & Piling filed its Summons seven days after the notice deadline and was not made aware of its mistake until after the 31-day deadline to request BPR instead had passed, Pipe & Piling will have no forum whatsoever in which to seek review of Commerce's determination. *See* Appx118-120. Given that BPR was created to provide more protection to Canadian exporters like Pipe & Piling from the actions of U.S. agencies and departments like Commerce, it would be perverse to assume that Congress and the negotiators of the USMCA intended such a result.

Second, the availability of equitable tolling to seek judicial review would not disrupt the BPR process because the deadline to seek a binational panel could be tolled as well. The CIT argues that a nonjurisdictional reading of the Special Rule "could result in USMCA members being unable to pre-empt domestic judicial review by requesting a binational panel, because they would only receive notice after the time to request a panel expires." Appx009. This presents a false dilemma—if equitable tolling is applicable to the 20-day notice requirement of the Special Rule, then it can also be applied to the 31-day deadline to request a panel.

The only actual consequence of tolling would be an overall delay of the review process, but delays of the review process are already expressly addressed by the Special Rule in other circumstances. For example, the Special Rule notes

24

that the time for requesting a panel may be suspended, and "any unexpired time for providing notice of intent to commence judicial review shall, during the pendency of any such suspension, also be suspended."  19 U.S.C. § 1516a(g)(3)(B)(iii); 19 U.S.C. § 1516a(g)(8)(A)(ii).  Similarly, the USMCA and the USMCA Implementation Act also expressly state that the treaty is not intended to be inconsistent with any law of the United States, and the USMCA directs the Parties to "adopt or maintain rules of procedure based, where appropriate, on judicial rules of appellate procedure, and shall include rules concerning: … computation and extensions of time." 19 U.S.C. § 4512(a)(1); USMCA Art. 10.12(14). Federal rules of procedure and CIT precedent both allow the CIT to provide equitable relief, and the Special Rule clearly was not intended to change that.

Third, the availability of equitable tolling is already highly limited and easily administrable—the existing test for its application would prevent any abuse by U.S. litigants that could undermine the protection of Canadian exporters.  In non-FTA member AD/CVD cases, the CIT has held that equitable tolling is available on a case-by-case basis where "the interests in fairness and accuracy outweigh the burden upon Commerce." *Grobest & I-Mei Indus. (Vietnam) Co. v. United States*, 815 F. Supp. 2d 1342, 1367 (Ct. Int'l Trade 2012), *opinion after remand*, 36 C.I.T. 1092 (2012).  Under this case-by-case assessment, the CIT can easily determine

whether the application of equitable tolling in a particular case would serve to advance the protection of FTA member countries in accordance with the USMCA, or whether it would undermine BPR. The CIT need only assess whether the claimant seeking equitable relief is from the U.S., or from either Canada or Mexico. Moreover, courts rarely actually apply equitable tolling because a "garden variety claim of excusable neglect" is not enough—a claimant must demonstrate that they have diligently pursued judicial remedies, or that they have "been induced or tricked by [an] adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990). Ruling that the Special Rule's notice provisions are nonjurisdictional would not open any floodgates or send the CIT down a slippery slope.

In sum, the statutory scheme and context in which the Special Rule is embedded strongly suggest that its notice provisions are nonjurisdictional. The correlated potential availability of equitable tolling would actually better enforce the purpose and intent of BPR by ensuring that litigants from FTA member countries are not automatically stripped of access to any forum whatsoever simply because of a single untimely filing.

**III.** **There is no binding precedent establishing whether the notice provisions of the Special Rule are jurisdictional when no binational panel is requested.**

Because the Special Rule (1) contains no clear statement on jurisdiction, (2) was not intended by Congress or USMCA negotiators to be jurisdictional, and (3) does not fit within the *Bowles* exception, the only other way its notice provisions could possibly be jurisdictional is via *stare decisis*. *See Bowles*, 551 U.S. at 209; *Harrow*, 601 U.S. at 488–89. Unlike in *Bowles*, however, there is no binding precedent pre-dating the clear statement rule[1] as to whether the Special Rule's notice provisions are jurisdictional.

To be binding, a prior jurisdictional holding must provide more analysis than a "decision that simply states that the court is dismissing for lack of jurisdiction when some threshold fact has not been established[.]" *Wilkins*, 598 U.S. 152 at 143. A decision without more analysis is "understood as a 'drive-by jurisdictional rulin[g]' and receives no precedential effect." *Id.* (cleaned up). Under the clear statement test, a jurisdictional decision is only binding if it is a "definitive earlier interpretation" that "addressed whether a provision is 'technically jurisdictional,'

---

[1] The clear statement rule was first applied by the Supreme Court to an issue of subject matter jurisdiction in 2005. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 502 (2006) (explaining the "readily administrable bright line" rule that courts should treat statutory limitations as nonjurisdictional unless the Legislature "clearly states" otherwise).

*i.e.*, whether it truly operates as a limit on a court's subject-matter jurisdiction, and whether anything in the decision turned on that characterization." *Id.* (cleaned up).

There is only one CIT case that has ever addressed whether the notice provisions of the Special Rule are jurisdictional when no panel has been timely requested, but it is clearly a "jurisdictional drive-by" with no precedential weight. In *American Cast Iron Pipe Co. v. United States*, the CIT held for the first time that it is stripped entirely of subject matter jurisdiction by untimely notice of intent to seek judicial review even where no BPR was requested. 405 F. Supp. 3d 1378, 1383-84 (Ct. Int'l Trade 2019). However, the only justification for this position in the opinion is that,

> Under the Special Rule, the providing of timely notice is a jurisdictional requirement. That much is clear from the language Congress chose: the "determination ... is *reviewable ... only if* the party seeking to commence review *has provided timely notice* ...." 19 U.S.C. § 1516a(g)(3)(B) (emphasis added). It necessarily follows that these actions must be dismissed.

*American Cast Iron Pipe Co.*, 405 F. Supp. 3d at 1383-84. The CIT also briefly opines on the finality of administrative determinations and the priority given to BPR, but the CIT essentially relies solely on a single sentence for its determination on jurisdiction, and that sentence happens to be "strikingly similar" to statutes the Supreme Court has subsequently held nonjurisdictional. Appx008-009; *see also*

*supra* Section II.b; *Santos-Zacaria*, 598 U.S. at 419. This is plainly insufficient under the clear statement test.

Furthermore, the contrast between Pipe & Piling's circumstances and *American Cast Iron* perfectly illustrates why the Special Rule's notice provisions are nonjurisdictional—whereas Pipe & Piling is a Canadian exporter seeking review of a U.S. agency determination unfavorable to its exports, the plaintiff in *American Cast Iron* was a U.S.-based manufacturer seeking review of a U.S. agency determination favorable to a Canadian exporter. Moreover, the Government of Canada took interest in *American Cast Iron* and sought leave to appear as *amicus curiae*, whereas in this matter the Government of Canada has shown no interest at all. *American Cast Iron Pipe Co.*, 405 F. Supp. 3d at 1381; Appx042; Appx105; Appx119. As a result of these differences, a proper application of both statutory intent and equitable tolling principles would have lead to the same result in *American Cast Iron*—equitable relief would have been denied and the plaintiff's complaint would have been dismissed. *See supra* Section II.b.

The CIT's reliance on *American Cast Iron* is thus misplaced—there is simply no precedential weight to that holding to support that the notice provisions of the Special Rule are jurisdictional. Appx005.

## IV. The Special Rule would violate the Constitution and undermine Executive policy if its notice provisions were jurisdictional.

Finally, the Supreme Court has long recognized that statutes should be presumed constitutional when possible. *Fletcher v. Peck*, 10 U.S. 87, 128 (1810) ("The question, whether a law be void for its repugnancy to the constitution … ought seldom, if ever, to be decided in the affirmative, in a doubtful case."). When deciding a question that implicates the constitutionality of a statutory provision like the Special Rule, courts are thus obligated to interpret statutory law to avoid a constitutional conflict where "fairly possible." *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

However, the CIT's jurisdictional reading of the Special Rule raises a number of serious constitutional questions. These questions can only be avoided by holding that the Special Rule is nonjurisdictional.

### a. A jurisdictional interpretation of the Special Rule could violate the Due Process Clause of the Fifth Amendment.

As explained in Section II.b, if the notice timing provisions of the Special Rule are jurisdictional, a single untimely filing can easily result in Canadian exporters like Pipe & Piling being stripped of any right to review of adverse agency decisions whatsoever. Without the ability to seek equitable tolling, this interpretation of the Special Rule would not only deprive Pipe & Piling of its bare minimum right to a meaningful opportunity to be heard but would also

30

nonsensically reduce the rights of FTA-member exporters and manufacturers in comparison to non-FTA members.

Since the 1980s, Congress and the negotiators of the USMCA and its predecessors have generally attempted to expand access to review of agency decision-making, not reduce it. The CIT has acknowledged this Congressional intent to provide broad standing and to further expand the rights of FTA-members in multiple cases. *See Grobest,* 36 Ct. Int'l Trade at 125*; Gov't of Canada v. United States,* 686 F. Supp. 3d 1320, 1332-33 (Ct. Int'l Trade 2024) (quoting S. Rep. No. 96-249, at 636 (1979) (explaining that Congress gave this Court a broad jurisdictional grant under section 1516a to "greatly expand the right of interested parties to appear and be heard in litigation concerning antidumping and countervailing duties[.]")). In addition, Congress expressly provided for equitable relief in AD/CVD cases when it established that the CIT is an Article III court, and the USMCA and the USMCA Implementation Act expressly state that they are intended to be consistent with the law of the United States. 28 U.S.C. § 1585; the Customs Court Act of 1980, Pub. L. No. 96–417, 94 Stat. 1727; 19 U.S.C. § 4512(a)(1). A nonjurisdictional reading of the Special Rule is more consistent with both the broad jurisdictional grant of the CIT and with the purpose of BPR to protect FTA-members from U.S. agencies, not from U.S. courts.

Considering the extensive efforts Canada and Mexico invested in negotiating BPR to limit U.S. protectionism, it is illogical for the Special Rule to be jurisdictional because that would reduce the rights of FTA member exporters in comparison to non-FTA members. For parties from non-FTA member countries, the CIT has held that equitable tolling is available and that under the abuse of discretion standard for agency actions, despite the Government's "necessary discretion to set and enforce its deadlines, the court will review on a case-by-case basis whether the interests of accuracy and fairness outweigh the burden placed on the [Government] and the interest in finality." *Grobest*, 36 Ct. Int'l Trade at 123. As argued earlier in Section II.b, the extension of this test for equitable relief to FTA-members would better enforce the purpose of BPR by protecting Canadian and Mexican exporters from U.S. bias without opening the door to harassment from U.S. litigants.

> **b. A jurisdictional reading of the Special Rule creates a Constitutional conflict between the USMCA and its implementing statute**

The availability of equitable relief under the Special Rule implicates both Congress's Article I powers and the Executive's Article II powers because, although the Import-Export Clause is under Article I, the USMCA is a treaty created pursuant to Article II, Section 2, Clause 2. Art. I, § 10, Cl. 2; Art. II, § 2,

Cl. 2. The USMCA is a non-self-executing treaty that binds the U.S. under international law, but that does not create any enforceable domestic rights or obligations in U.S. courts without its implementing statute. *See Medellín v. Texas*, 552 U.S. 491, 505. As a result, both Executive and Congressional intent are essential to the interpretation of the Special Rule, and any such interpretation risks raising separation of powers concerns if it does not account for both branches. *See Kolovrat*, 366 U.S. at 194 ("While courts interpret treaties for themselves, the meaning given them by the departments of government particularly charged with their negotiation and enforcement is given great weight.").

A jurisdictional reading of the Special Rule would clearly conflict with the purpose of BPR to protect Canadian manufacturers and exporters from harassment by U.S. litigants and to limit the protectionist nature of U.S. trade law that harms Canadian exporters like Pipe & Piling via arbitrary agency actions. *See supra* Section II.a. This would conflict with the intent behind the USMCA as a "contract between [] nations," by undermining the rights Canada fought for during negotiations. *See Foster v. Neilson*, 27 U.S. 253, 254 (1829), *overruled on other grounds by United States v. Percheman*, 32 U.S. 51 (1833). The alternative forum provided by BPR was meant to expand the review of meritorious claims against arbitrary agency decisions against Canadian exporters, not to strip them of any

right to review at all.

A nonjurisdictional interpretation of the Special Rule aligns this clear Executive intent with that of Congress by balancing Canada's desire for protection against U.S. agencies, with the U.S. CIT's broad jurisdictional grant in AD/CVD matters.

## CONCLUSION

For the foregoing reasons, this Court should reverse the order below and hold that the notice requirements of the Special Rule are nonjurisdictional. This Court should then remand the case to the CIT for further consideration regarding the availability of equitable tolling and its potential application to Pipe & Piling.

Dated: January 13, 2026

Alexander H. Schaefer
ASchaefer@crowell.com
Weronika Bukowski
WBukowski@crowell.com
Pierce Jungwoon Lee
PLee@crowell.com
Meaghan A. Katz
MKatz@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
ATTORNEYS FOR APPELLANT

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32, because this document contains 7330 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman style font.

Dated: January 13, 2026

Alexander H. Schaefer
ASchaefer@crowell.com
Weronika Bukowski
WBukowski@crowell.com
Pierce Jungwoon Lee
PLee@crowell.com
Meaghan A. Katz
MKatz@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
ATTORNEYS FOR APPELLANT

**CERTIFICATE OF SERVICE**

I certify that on January 13, 2026, I electronically filed the foregoing with the Clerk of Court for the U.S. Court of Appeals for the Federal Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 13, 2026

Alexander H. Schaefer
ASchaefer@crowell.com
Weronika Bukowski
WBukowski@crowell.com
Pierce Jungwoon Lee
PLee@crowell.com
Meaghan A. Katz
MKatz@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
ATTORNEYS FOR APPELLANT